IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEAD BE GONE, | ) |
| | ) |
| Plaintiff, | )   2:23-cv-2108 |
| | ) |
| v. | ) |
| | ) |
| GOLDEN PHEASANT SPORTSMEN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM ORDER

Plaintiff Lead Be Gone, an organization dedicated to "combat[ing] soil, water, and noise pollution," alleges that Defendant Golden Pheasant Sportsmen's operation of an outdoor shooting range caused environmental lead pollution in the soil, surface water, and groundwater of Buffalo Township, Pennsylvania. ECF 1. On December 13, 2023, Lead Be Gone filed a three-count complaint against Golden Pheasant, bringing violations of the Resource Conservation and Recovery Act (RCRA), the Hazardous Sites Cleanup Act (HSCA), the Clean Water Act (CWA), and the Clean Streams Law of Pennsylvania (CSL). *Id.*

Lead Be Gone obtained a clerk's entry of default on June 6, 2024, after Golden Pheasant failed to answer or otherwise respond to the complaint. ECF 13. When Lead Be Gone moved for a default judgment on July 19, 2024 (ECF 14), however, the Court discovered that Lead Be Gone had failed to serve Golden Pheasant with original process within 90 days of filing its complaint, as required by Rule 4(m) of the Federal Rules of Civil Procedure.

So the Court ordered Lead Be Gone to show cause as to whether service was timely made; if not, whether there was good cause for the failure to serve; and whether absent good cause, the Court must dismiss the complaint without prejudice for failure to serve. ECF 15. Lead Be Gone responded on July 26, 2024. ECF 16.

Lead Be Gone concedes that service was untimely: the 90-day period for service expired on March 12, 2024, and Lead Be Gone didn't serve Golden Pheasant until April 22, 2024, 42 days later. ECF 10; ECF 16, p. 2. So the Court must now determine whether to dismiss the complaint for failure to timely serve.

The Court may *sua sponte* dismiss a complaint for insufficient service of process under Rule 4(m). *Snyder v. United States*, 404 F. App'x 695, 698 (3d Cir. 2010). That involves a two-step inquiry. "First, [the Court] should determine whether good cause exists for an extension of time. If good cause is present, the[n it] must extend time for service and the inquiry is ended. If, however, good cause does not exist, the [C]ourt may in its discretion decide whether to dismiss the case without prejudice or extend time for service." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995).

The Court concludes that good cause doesn't exist here, but will exercise its discretion to extend time for service.

**I.    There is no good cause to extend the time for service.**

Good cause "requires a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995) (cleaned up). In determining whether good cause exists, the Court considers (1) the reasonableness of the plaintiff's efforts to serve; (2) the prejudice to the defendant; and (3) whether the plaintiff moved for an enlargement of time to serve. *Beautyman v. Laurent*, 829 F. App'x 581, 583 (3d Cir. 2020). Though there are three factors to consider, the "primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997) (quoting *MCI Telecomms.*, 71 F.3d at 1097).

Lead Be Gone offers the following explanation for its tardiness: Lead Be Gone's original attorney—who improperly served Golden Pheasant by mail and did not

request a summons—left his firm with limited notice, two months after filing the complaint. ECF 16, p. 3. His workload fell on Lead Be Gone's current attorney, who, busy with his own responsibilities amid the abrupt departure of the firm's supervising attorney, erroneously "relied on the Certificate of Service included with the original complaint, [and] assumed that service had been effectuated[.]" *Id.* A few weeks later in early March—with only a handful of days remaining to serve—counsel learned of the error, and attempted service. *Id.* at 4. But his attempt was stymied by the missing summons, and he couldn't request a summons because he hadn't yet entered an appearance. *Id.* Further delays arose from technical errors and a mistaken attempt to circumvent these errors by mailing a physical copy of a motion to enter his appearance. *Id.* On March 21, 2024, the new attorney finally entered his appearance, and the clerk issued the summons, but by that time over a week had passed since the service deadline. ECF 6; ECF 7. Counsel then arranged for service, and a process server at last served Golden Pheasant on April 22, 2024. ECF 16, p. 4.

Reviewing this explanation and the rest of the record, it's clear that a good cause extension isn't warranted.

Concerning the first factor, Lead Be Gone's efforts to serve aren't reasonable, even discounting the original attempt at service by mail. Lead Be Gone's current attorney may have "relied on the Certificate of Service included with the original complaint," but the certificate of service—which states that service to an in-state defendant was made by certified and first-class mail—should have prompted further digging. *Id.* at 3.[1] And a glance at the docket would have revealed that the clerk

---

[1] Pennsylvania law permits service by mail if authorized by a rule of civil procedure. Pa.R.C.P. 403. That doesn't include service of original process to an in-state defendant. *See Scarnati v. PA Am. Water Co.*, No. 05-895, 2006 WL 8457429, at \*1 (W.D. Pa. Apr. 7, 2006) (Cercone, J.) ("[T]he Pennsylvania Rules of Civil Procedure do not authorize service of original process within Pennsylvania by mail, including certified mail.").

never issued a summons, the former attorney never filed a return of service, and Golden Pheasant never waived service.[2] Further still, it's unclear why, even with summons in hand, it took Lead Be Gone's process server another month to finally serve Golden Pheasant. ECF 10.

The third factor also doesn't support good cause. Lead Be Gone's current counsel did attempt to extend the time for service. But the request—contained in the cover letter accompanying the mailing of the motion to enter his appearance—was sent to the Clerk of Court and not filed with this Court. ECF 16, p. 4 & Ex. B. In any event, the request was only for another week, so Lead Be Gone still wouldn't have served Golden Pheasant within the extended service period. *Id.* It's also unclear why, once Lead Be Gone's counsel did successfully enter his appearance, he didn't immediately file a motion for extension of time (or at all).

Ultimately, the failure to timely serve boils down to compounded attorney error, and "neither 'inadvertence of counsel,' 'half-hearted efforts by counsel,' or 'reliance upon a third party or on a process server,' constitutes 'good cause' to excuse the failure to serve within [90] days." *Hardina v. Panera Bread Cadle, LLC*, No. 11-1527, 2012 WL 1607397, at *2 (W.D. Pa. May 8, 2012) (McVerry, J.) (quoting *Petrucelli*, 46 F.3d at 1307); *see also Braxton v. United States*, 817 F.2d 238, 242 (3d Cir. 1987) (finding "counsel's lapse in monitoring service of process coupled with a private process server's unexplained failure to timely serve . . . was proper ground for dismissal of the suit.").

As for prejudice, that "involves impairment of [the] defendant's ability to defend on the merits, rather than foregoing . . . a procedural or technical advantage."

---

[2] "The failure of a plaintiff to obtain valid process from the court to provide it with personal jurisdiction over the defendant in a civil case is fatal to the plaintiff's case." *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3d Cir. 1996).

*Boley*, 123 F.3d at 759 (cleaned up). A 42-day delay doesn't strike the court as prejudicial, particularly considering allegations that Golden Pheasant has operated its shooting range (and therefore polluted) for over six decades. ECF 1, ¶¶ 13-14; *see Torres v. Beard*, No. 11-863, 2012 WL 4326866, at *1, *3-4 (M.D. Pa. Sept. 20, 2012) (finding eight-month delay of service not prejudicial).

It also appears that Golden Pheasant had actual notice of the claims underlying the complaint before proper service occurred. As represented by Lead Be Gone, Golden Pheasant received Lead Be Gone's notice of intent to sue letter in October 2021, which listed violations of the same statutes as those alleged in its complaint. ECF 1-4. Plus, it received the complaint by mail soon after the complaint was filed. ECF 16, p. 5. Though "[n]otice cannot by itself validate an otherwise defective service[,]" *Ayres*, 99 F.3d at 568 (cleaned up), "actual notice to a defendant that an action was filed militates against a finding of prejudice." *Boley*, 123 F.3d at 759; *see also Gold Line, Inc. v. Ourbus, Inc.*, No. 20-2015, 2022 WL 16554992, at *6 (M.D. Pa. Oct. 31, 2022) (no prejudice where defendant "otherwise received the Complaint within days of Plaintiffs filing" (cleaned up)). So this factor favors good cause.

Still, on the balance of the factors, the Court concludes that good cause doesn't exist to excuse Lead Be Gone's tardy service. Prejudice is the only factor that supports good cause, and the "absence of prejudice alone can never constitute good cause to excuse late service." *MCI Telecomms.*, 71 F.3d at 1097. To be clear, the Court is sympathetic to Lead Be Gone's current counsel's predicament; he was placed in a tough spot when he inherited this case, and it's understandable that this could have slipped through the cracks. But that's not good cause.

## II.  The Court will exercise its discretion and excuse late service.

All that said, the Court will grant a discretionary extension of service. In determining whether to grant a discretionary extension, the court may consider

several factors, including: (1) the defendant's actual notice of the action; (2) prejudice to the defendant; (3) the statute of limitations; (4) conduct of the defendant; and (5) whether the plaintiff is represented by counsel. *Chiang v. U.S. Small Bus. Admin.*, 331 F. App'x 113, 116 (3d Cir. 2009). The Court may also consider any other relevant factor, *see id.*, such as whether "there exists a reasonable prospect that service may yet be obtained." *Blazevich v. Star Hotels, Inc.*, No. 19-198, 2021 WL 1214688, at *4 (W.D. Pa. Mar. 31, 2021) (Haines, J.) (cleaned up); *see also Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992) ("[D]ismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained.").

Several of these considerations favor a discretionary extension. As the Court explained above, it appears that Golden Pheasant had actual notice of the action, "[t]he time for service was not excessively tardy[,] and [Golden Pheasant's] ability to defend this action has[, as far as the Court can tell,] not been impaired." *Mlinarchik v. Brennan*, No. 16-257, 2018 WL 351945, at *4 n.8 (W.D. Pa. Jan. 9, 2018) (Gibson, J.) (exercising discretion to retroactively grant 30-day extension to serve).

Moreover, although proper service was late, it did occur, and Golden Pheasant still took no action—to object to improper service or otherwise—despite the looming threat of a default judgment. *See Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. 15-6480, 2020 WL 93944, at *4 (E.D. Pa. Jan. 8, 2020) (granting discretionary extension in part because defendant's objection to service came more than three years after first receiving improperly served notice, and dismissal "would contravene the general principle that defendants wishing to object to service of process should do so promptly").

Nor does it appear that Lead Be Gone purposefully engineered the delay or gamed the error to secure a default judgment. Based on the record, quite the opposite. Lead Be Gone didn't request the clerk's entry of default until after proper service, and Lead Be Gone didn't move for default judgment until nearly three months after

proper service. Lead Be Gone also represents that it reached out to Golden Pheasant's last known attorney and expressed that if Golden Pheasant entered an appearance, it would work to reverse the clerk's entry of default, yet heard nothing in response. ECF 16, p. 6.

In the Court's view, that's enough to tip the scales for exercising its discretion to accept the untimely service.

*   *   *

Accordingly, after careful consideration, it is hereby **ORDERED** that Plaintiff cured its defective service.

Still, this situation is unique: an extension of the time to serve means that the case is proceeding directly to a default judgment, rather than a decision on the merits. However inadvisable, Golden Pheasant's absence may be explained by a reliance on the improper service. So given the Third Circuit's preference for decisions on the merits, *see, e.g.*, *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984), the Court further **ORDERS** Lead Be Gone to serve a copy of this order on Golden Pheasant by federal express or U.S. Mail by August 12, 2024, and then file a proof of mailing on the docket. The Court further **ORDERS** that Golden Pheasant will have until September 16, 2024, to have counsel enter an appearance and to file an answer to the complaint and/or an opposition to Lead Be Gone's motion for default judgment. The Court will defer ruling on the pending motion until the time expires for Golden Pheasant to appear.

Dated: August 8, 2024

BY THE COURT:

/s/ J. Nicholas Ranjan
J. Nicholas Ranjan
United States District Judge